Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5524 | **DATE** | 7/8/2002 |
| **CASE TITLE** | U.S.A. vs. Jones | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying defendant's motion to vacate, set aside or correct his sentence under 28 U.S.C. Section 2255. Defendant's motion for summary judgment and expansion of the record is denied as moot. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 U.S number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 9 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 25 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/8/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | 02 JUL -8 PM 5:23 | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 01 C 5524 |
| ) | |
| VIRGIL E. JONES ) | |

**MEMORANDUM OPINION AND ORDER**

Virgil E. Jones, a former alderman in Chicago, Illinois, was convicted of one count of conspiracy to commit extortion, two counts of attempted extortion, and two counts of filing false income tax returns. I sentenced him to a total of forty-one months imprisonment, two years of supervised release, and a $1,000 fine. He appealed and his conviction was affirmed. *United States v. Jones*, 224 F.3d 621 (7th Cir. 2000). Eleven months later, on July 17, 2001, he filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. The government finally responded to the motion on May 28, 2002. I deny the motion.

I.

The facts underlying Mr. Jones' conviction are set out in the Seventh Circuit's opinion, 224 F.3d at 623, but the short version follows. In 1991 and 1992, while Mr. Jones was Alderman and Democratic Ward Committeeman in the 15th Ward in Chicago, he accepted cash payments from John Christopher, an FBI mole, in exchange for overlooking Mr. Christopher's illegal dumpsite in Mr. Jones' ward. Mr. Jones also accepted payments from Mr. Christopher

25

in exchange for influence and assistance with violation notices and in obtaining a permit for a rock-crusher at the dumpsite. Mr. Jones never paid taxes on these cash payments. He was indicted in 1997.

II.

Mr. Jones raises three general grounds for vacating his conviction: (1) that the prosecution concealed exculpatory evidence; (2) that he received ineffective assistance of counsel; and (3) that the prosecution impermissibly used its peremptory strikes to rid the jury of African-American members. His ineffective assistance of counsel claim contains at least twenty-two separate allegations of deficient performance by his counsel, and the remainder of his motion is peppered with allegations that his counsel was deficient.

Mr. Jones did not raise his prosecutorial misconduct claim, or any of the additional claims in his "Motion for Summary Judgment and Expansion of the Record," on direct appeal. He has not offered an excuse for this procedural default, so the claims are barred. *See McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996) (holding that issues not raised on direct appeal may not be raised in a § 2255 motion unless the defendant can demonstrate either cause and prejudice or that refusal to consider the claims would lead to a fundamental miscarriage of justice).

Likewise, "in the absence of changed circumstances of fact or law, [I] will not reconsider an issue which was already decided on

direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Mr. Jones raised his *Batson* challenge to the prosecution's use of peremptory strikes on direct appeal, and the Seventh Circuit carefully considered and rejected it, so I will not re-examine his claim here. The other two issues raised on appeal related to cross-examination of Christopher related to his dealings with Edward Vrdolyak, a politically-connected private attorney, and a jury instruction defining "wilfully." 224 F.3d at 626. Mr. Jones does not raise these issues directly; instead he charges his attorney with ineffective assistance of counsel with regard to both of these issues.

Ineffective assistance of counsel claims not raised on direct appeal are not barred from review on § 2255 motion where, as here, the petitioner was represented by the same counsel at trial and on appeal. *See Guinan v. United States*, 6 F.3d 468, 472 (7th Cir. 1993). A petitioner claiming that his counsel was constitutionally ineffective must "demonstrate that his counsel's performance fell below an objective standard of reasonableness," and "that he was prejudiced by the deficient performance." *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Reasonableness is measured according to prevailing professional norms and under the totality of the circumstances, and "to prevail, the [petitioner] must overcome the presumption that the challenged act or omission might have been

considered sound trial strategy." *Id.* at 890-91. To demonstrate prejudice, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 891. If the petitioner makes an insufficient showing on either prong of the test, I need not consider the other prong. *Id.* at 890.

With regard to the jury instruction, Mr. Jones says that his attorney should have objected to a jury instruction about intent. He does not specifically identify the instruction, so he has waived the argument, *see United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."), and to the extent that he means the instruction defining "willfully," the Seventh Circuit held that the instruction was not erroneous, 224 F.3d at 626 n.3, so any failure to object was not constitutionally ineffective. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel.").

Mr. Jones' attorney cross-examined FBI mole Christopher about his relationship with Vrdolyak. Tr. at 469; *see also* 224 F.3d at 626. Mr. Jones argues that his attorney should have introduced evidence of a loan agreement between Christopher and Vrdolyak to show Vrdolyak's motive to assist Christopher and to show that Christopher did not need assistance from Mr. Jones in light of the

4

payments to Vrdolyak. Mr. Jones' attorney did attempt to impeach Christopher with his relationship with Vrdolyak, and Mr. Jones has not shown that the failure to introduce evidence of the loan agreement was not a trial strategy. *See United States v. Alex Janows & Co.*, 2 F.3d 716, 722 (7th Cir. 1993) (holding that, where there was evidence of trial strategy and defendant did not offer evidence outside the record to establish deficient performance, ineffective assistance of counsel claim failed). He also says that his lawyer failed to pursue a line of questioning that would have impeached Christopher with his connections to organized crime, but his lawyer did ask Christopher about his ties to organized crime, *see* Tr. at 382, 385-87; *see also* 441-42 (cross-examination by co-defendant's counsel), so his performance was not deficient. Mr. Jones' final claim with regard to Christopher is that his counsel should have called three witnesses who were present at their first meeting in 1991 and would have testified that there was no discussion of bribes. There was substantial evidence that Jones was later observed taking cash payments from Christopher, though, so the omission of fact that there was no explicit discussion of bribery at their first meeting did not prejudice him.

Mr. Jones states that the evidence was insufficient to convict and that his attorney's failure to cite the case law in that respect was ineffective assistance of counsel. However, his counsel challenged the sufficiency of the evidence both in the post-trial

5

motions and on appeal, so there is no support for this claim. Mr. Jones also claims that there are City of Chicago licenses and applications from 1991 that show that the dumping site alleged to be illegal was actually legitimate and licensed, and that his attorney was ineffective for failing to introduce evidence of the licenses in light of government testimony that the site was unlicensed for rock-crushing. In the motion for new trial, his attorney did argue that the license and application were exculpatory, and said he was still trying to obtain the documents. The government attached the permit and application to its response. There was no evidence that the application for a rock-crushing permit was granted, and the license was merely a general business license. Not only was there no deficiency because counsel raised the objection, there was no prejudice because the documents were not exculpatory.[1]

Mr. Jones argues that his counsel had an undisclosed conflict of interest because he was allegedly being investigated by the Internal Revenue Service at the time of his trial and appeal. He bases this claim on a 2001 column (nearly two years after his trial and a year after his appeal) from the Chicago Sun-Times criticizing

---

[1] Mr. Jones also claims that his attorney should have introduced "two maps from the [C]ity of Chicago map department for the years 1989 and 1992" along with the license and application, but he does not explain the significance of these maps, so he cannot demonstrate prejudice from the failure to introduce them. Because I conclude that the license and application were not exculpatory, there was no ineffective assistance of counsel in failing to introduce FBI 302 reports relating to the application.

6

Mr. Jones's attorney, who had recently been sworn in as a Cook County Associate Judge, for failing to pay child support and for owing back taxes. The article is hearsay because it is offered for the truth of the matters asserted in it, so it cannot be used to support his claim. *See* Fed. R. Evid. 802. Moreover, he offers no legal basis, nor am I aware of any, for a conflict of interest in a tax evasion case where defendant's counsel owes back taxes. *See Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993) ("While the courts liberally construe *pro se* pleadings as a matter of course, judges are not also required to construct a party's legal arguments for him.").

At one point during the trial, Mr. Jones alleges that his attorney referred to him as "Lock 'Em Up Jones," and he claims that this could have prejudiced the jury. He does not explain how it could have prejudiced him, or even allege that it actually did, so he has waived this vague and undeveloped argument. *See Lanzotti*, 205 F.3d at 957. Mr. Jones alleges conclusorily that his indictment was improperly amended in violation of the Fifth Amendment, and that his attorney failed to object, but he has waived this claim as well by failing to develop it. *See id.*

Mr. Jones raises a number of claims relating to FBI "302 reports," which are interview reports. First, he claims that his counsel failed to object to a *Brady* violation based on the government's failure to turn over "numerous 302 reports from

7

interviews with former staff and business persons in t[he] 15th ward and the grand jury testimony of quite a few persons whose statements and testimony would have aided the defendant in his theory of his defense." He also claims that his counsel failed to file a motion for disclosure under the Jencks Act of all interview notes and 302 reports. Mr. Jones does not attach any of the allegedly suppressed reports, nor does he describe them with sufficient detail to determine whether it was material for the purposes of Brady, see United States v. Silva, 71 F.3d 667, 671 (7th Cir. 1995), or whether any alleged Jencks Act violation was harmless, see Jackson v. United States, No. 93-3782, 28 F.3d 1216, 1994 WL 375427, at *2 (7th Cir. July 18, 1994) (Jencks Act claim failed where petitioner did not name any government witnesses that testified and whose statements may have been discoverable pursuant to 18 U.S.C. § 3500.). Because he provides insufficient information to evaluate the strength of the underlying claims, Mr. Jones fails to demonstrate that he was prejudiced by his attorney's failure to raise these objections.

He also claims that his attorney should have introduced two 302 reports relating to statements of Michael Gerard, an unindicted co-conspirator. He does not attach either report, but he does describe their contents generally. The first report supposedly established that Gerard knew that Christopher was an informant, which Mr. Jones says would have established that there could be no

8

conspiracy with a known government informant. However, the evidence at trial established a conspiracy between Mr. Jones and his co-defendant, Charles Nix, to extort Christopher in violation of the Hobbs Act, so the existence of a conspiracy between Gerard and Christopher is irrelevant. The second report involved a conversation between Gerard and Christopher in which Gerard admitted to obtaining a $10,000 loan for Christopher. Mr. Jones argues that Gerard's assistance to Christopher would have shown that Gerard was not trying to extort Christopher, but the government is correct that, regardless of Gerard's relationship with Christopher, this evidence would not bear on the conspiracy between Mr. Jones and Charles Nix. For the same reason, evidence that Christopher had retained the law firm of Daley & George to assist him in obtaining a permit, which Mr. Jones' attorney did not introduce and which Mr. Jones says would have shown that Christopher did not intend to do anything illegal to get a license, has no bearing on Mr. Jones' intent to extort Christopher.

Mr. Jones also claims that his attorney ought to have introduced a tape in which Christopher discussed his connections to the mayor and the mayor's brother's law firm, because Mr. Jones had spoken openly against the mayor. The motivation for his prosecution is irrelevant to the question of his guilt. To the extent that he means that his attorney should have argued that he was the victim of prosecutorial vindictiveness, he has not come forward with any

9

"objective evidence showing genuine prosecutorial vindictiveness." *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998). Mr. Jones was not prejudiced by the failure to introduce this evidence.

Mr. Jones also claims that his counsel was ineffective in cross-examining Dan Walsh, a prosecution witness who testified that he dealt with Christopher because he was afraid that he would otherwise not have been able to get permits. Mr. Jones says that this is false testimony because Walsh grew up with Mayor Daley and their fathers had been close; presumably he means that any contractor who is connected to the mayor need not fear a denial of construction permits. Even accepting this tenuous factual premise, Mr. Jones has not demonstrated that he was prejudiced in any way by the absence of this testimony, because the issue was *Mr. Jones'* state of mind.

During closing arguments, the Assistant United States Attorney characterized Mr. Jones as a "liar." Although his attorney did not object to this statement during closing arguments, Mr. Jones has not rebutted the presumption that the decision not to object was sound trial strategy. *See United States v. Driver*, 798 F.2d 248, 255 (7th Cir. 1986).

Mr. Jones claims that his attorney should have called the owner of an establishment called the Checkerboard #2 to testify about a Christmas party in 1992 and a birthday party in 1993. He claims that he was prejudiced by the absence of this testimony, but

10

he does not even minimally explain the relevance of those two parties to his defense, so he has not established ineffective assistance.

Mr. Jones describes a videotape of a television program on WYCC in which he claims to have blown the whistle on the illegal dumping site, which he says his attorney did not attempt to obtain and which would have shown that he was not trying to cover up the site. However, he provides neither the tape, nor the date that it aired, so I cannot determine what impact, if any, it would have had on Mr. Jones' defense, and Mr. Jones has failed to demonstrate that he was prejudiced by its absence at his trial.

Mr. Jones says that his lawyer should have objected when the government introduced recorded conversations that had been transferred to CD-Rom rather than presenting them in their original taped format. He refers to the "Filiberto case," by which I assume he means *United States v. Filiberto Ojeda Rios*, 495 U.S. 257 (1990), in which the Supreme Court held that a delay in sealing original recordings pursuant to 18 U.S.C. § 2518(8)(a) warrants exclusion of recordings, *id.* at 264, unless the government provides a satisfactory explanation for excusable delay, *id.* at 265. There is no evidence of any delay in sealing the recordings here, so *Ojeda Rios* is inapposite. Moreover, to the extent that Mr. Jones infers that the recordings were altered, he has provided no specific allegations from which I could evaluate his claim, and has

11

therefore waived it.

Mr. Jones says that his attorney should have objected that his prosecution violated the Speedy Trial Act, 18 U.S.C. § 3161, and that the prosecution failed to state a Hobbs Act violation, but, on the record before me, these were losing arguments that his lawyer had no obligation to raise. *See Stone*, 86 F.3d at 717. Mr. Jones argues that the prosecution waited more than four years to seek an indictment, but the Sixth Amendment and the Speedy Trial Act do not apply to pre-indictment delays. *See United States v. Williams*, 738 F.2d 172, 175 (7th Cir. 1984). He claims that he was disadvantaged, but has not explained how he was prejudiced by the pre-indictment delay, so he cannot make out a claim for a due process violation. *See Spears*, 159 F.3d at 1084 ("For a defendant to successfully assert a due process violation based on an unjustified pre-indictment delay, he must first show that the delay caused actual and substantial prejudice to his right to a fair trial."). Mr. Jones argues that the government improperly charged him with an attempted Hobbs Act violation because the alleged conduct involved a completed offense, but he offers no basis for concluding that it was improper to charge him with the lesser offense of attempt. He also argues that there was no economic loss or actual impact on commerce, but there was overwhelming evidence of *quid pro quo* extortion, *see United States v. Giles*, 246 F.3d 966, 971 (7th Cir. 2001), to support Mr. Jones's conviction. There was also sufficient

evidence of a *de minimis* effect on interstate commerce to satisfy the jurisdictional requirements of the Hobbs Act. *See* Tr. at 269-78 (evidence and stipulations that equipment used in Christopher's business had been shipped in interstate commerce); *United States v. Petersen*, 236 F.3d 848, 851 (7th Cir. 2001).

Before his trial, Mr. Jones says that he found two transmitters—one in his office, and one in a mailbox—and that he gave them to his pre-trial attorney, who sealed them in an envelope. When he later asked his trial attorney (a different attorney) about the transmitters, his trial attorney said he was unaware of them. Mr. Jones claims that his trial attorney ought to have made every effort to recover the transmitters, which supposedly contained conversations with Christopher in which Mr. Jones resisted offers of money and claimed not to want to hear anything about illegal activities. Although he describes the content of the conversations, he produces no support for this claim, such as an affidavit of his first attorney, that these transmitters actually exist, so he cannot make out a claim of deficient performance by his trial attorney.

Finally, the government played a videotaped examination of unindicted co-conspirator Ed Norsworthy during the trial, and Mr. Jones claims that his attorney should have objected when the government turned off the videotape before testimony that would have shown that Mr. Jones was unaware of an unidentified meeting or

13

before Norsworthy told Christopher that Mr. Jones did not trust him. Neither of these statements would have had any impact in light of the wealth of evidence against Mr. Jones, so there is no reasonable probability that he was prejudiced by his attorney's failure to object.

III.

Because none of Mr. Jones' claims has merit, I DENY the motion to vacate his sentence. His "motion for Summary Judgment and Expansion of the Record" is therefor DENIED as moot.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated:   June 8, 2002